MILWAUKEE COUNTY DISTRICT COUNCIL 48, AMERICAN
FEDERATION OF STATE, COUNTY and MUNICIPAL EM-
PLOYEES, Appellant, v. WISCONSIN EMPLOYMENT RE-
LATIONS BOARD and another, Respondents.

*March 3—March 31, 1964.*

For the appellant there were briefs by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *David Leo Uelmen.*

For the respondent Wisconsin Employment Relations Board the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

FAIRCHILD, J. 1. *Does the circuit court have jurisdiction to review, pursuant to procedure prescribed in ch. 227, Stats., a certification of bargaining representative for munic-*

*ipal employees under sec. 111.70, Stats.?* Sec. 111.70, Stats., constitutes subch. IV of ch. 111. Subch. IV is entitled "Right of Public Employes to Organize or Join Labor Organizations." Secs. 111.01 to 111.19, inclusive, constitute subch. I, entitled "Employment Peace Act." The state and its political subdivisions are not employers under subch. I.

Sec. 111.70 (4) (d), Stats., authorizes the board to conduct an election among employees of a municipality to determine whether they desire to be represented by a labor organization. It provides: "Proceedings in representation cases shall be in accordance with ss. 111.02 (6) and 111.05 insofar as applicable, . . ." Sec. 111.02 (6) defines the term "collective bargaining unit." Sec. 111.05 is entitled "Representatives and elections." Sub. (2) provides for an election to determine the collective-bargaining unit. Sub. (3) provides for an election to determine the representation of employees in a collective-bargaining unit, and prescribes procedure for the election and certification of the results by the board. The last sentence of sub. (3) provides:

"The board's certification of the results of any election shall be conclusive as to the findings included therein unless reviewed in the same manner as provided by subsection (8) of section 111.07 for review of orders of the board."

Sec. 111.07 (8), Stats., provides that an order of the board shall be subject to review in the manner provided in ch. 227, Stats., in the circuit court of the county in which the appellant or any party resides or transacts business.

The attorney general argues that a "representation case" as referred to in sec. 111.70 (4) (d), Stats., stops at the time of certification by the board and that the last sentence of sec. 111.05 (3) is therefore inapplicable to matters arising under sec. 111.70. We consider this a strained interpretation and find no persuasive policy reason why a certification

of a collective-bargaining representative of municipal employees should not be subject to the same judicial review as in the case of nonmunicipal employees.

In a somewhat-similar statutory context, we recently held that a provision in sec. 40.035, Stats., making a certain type of county school committee order subject to appeal to the state superintendent not only imported the procedure set forth in another statute for appeal to the superintendent, but also the provision of the latter statute for ultimate appeal to the circuit court from the order of the superintendent.[1]

We conclude that judicial review in the manner provided in ch. 227, Stats., was available, and the circuit court had jurisdiction.

2. *Did the circuit court properly dismiss the petition for review for failure to state upon its face facts sufficient to show that the Federation was aggrieved and directly affected by the certification?* The board's certification and accompanying memorandum showed that the garbage-collection division was a separate division of the employer and the Independent Union desired to represent the laborers in that division as a separate bargaining unit, while the Federation desired these employees to be part of a unit made up of the entire department of public works. Therefore the board had determined that if a majority of the eligible employees in the division voted to be represented by the Independent Union, they would constitute themselves a separate bargaining unit as well as choose the Independent Union as their representative. Establishment of the division as a separate bargaining unit would require a favorable vote of a majority of those eligible to vote.[2] Unless the division were established as a separate bargaining unit, a simple majority of the ballots

---

[1] *Ford v. Rothwell,* ante, p. 80, 126 N. W. (2d) 489, decided March 3, 1964.

[2] Sec. 111.02 (6), Stats.

cast would be insufficient for certification of the Independent Union.

Thus, because the two issues were combined, if one or more of the 175 ballots counted for the Independent Union were void, there would be no separate bargaining unit and the Independent Union could not be certified, because there were 348 employees eligible to vote in the proposed unit.

Some of the facts just mentioned were omitted from the petition. Other than the general allegation that the Federation was aggrieved and its rights prejudiced, the petition did not demonstrate why the voiding of one or an unspecified number of ballots would affect the interests of the Federation, since the petition showed that the Independent Union received a substantial majority of the ballots actually cast.

Sec. 227.19 (3), Stats., provides for a motion to dismiss the petition for review "upon the ground that such petition, upon its face, does not state facts sufficient to show that the petitioner named therein is aggrieved and directly affected by the decision sought to be reviewed." At the hearing on the motion the court is authorized to grant leave to amend the petition if the proposed amendment has been served before the hearing. In the case now before us the motion to dismiss was not expressly grounded upon failure to state facts sufficient to show that petitioner was aggrieved and directly affected, and hence the form of the motion did not alert the petitioner to the claimed insufficiency and the specified procedure for amendment to cure the defect. As we read the opinion of the learned circuit judge, he has indicated that he would have deemed the petition amended to show the required facts except for his conclusion that the general provisions authorizing amendment [3] did not apply to amendment to meet a motion to dismiss under sec. 227.19 (3). Under these circumstances, and since the petitioner's inter-

---

[3] Sec. 227.16 (1), Stats.

est was concededly shown by the record of the proceeding before the board, we conclude that the circuit court erroneously dismissed the petition.

3. *Were ballots void?* The ballot prepared by the board contained three statements, with a blank square appropriately placed after each statement. One statement asserted a desire to be represented by the Independent Union, one a desire to be represented by the Federation, and one asserted that the voter did not desire to be represented by either. The ballot bore directions to "Mark 'X' in one square only" and to "Fold your ballot once to conceal the 'X' you have made."

Thirteen ballots show markings other than a simple "X" in one square. The Federation claims that all these ballots are void because the particular marks make each one capable of identification and thus tend to destroy the secrecy of the ballot.

One of the ballots contained "X" in one square and "NO" in another. Three contained one check mark in one square. Seven contained various marks other than an "X" or a check mark, in or around one square. Two contained "X" in the appropriate box for the Federation, but the number of a particular local of the Federation, appearing in the statement indicating a preference for the Federation, was circled.

Seven of the 13 questioned ballots indicated a choice of the Independent Union and were so counted.

Sec. 111.05 (2) and (3), Stats., requires that the board take a "secret ballot." The board's rules contain no requirement that a particular method of marking be used, although the ballot contains the references just quoted as to the use of an "X."[4] The statute governing governmental elections expressly permits voters to use an "X" "or other mark"[5] and provides that, "All ballots cast at any election shall be

---

[4] 1 Wis. Adm. Code, secs. ERB 3.03 and 11.08 (1).

[5] Sec. 6.23 (8), Stats.; sec. 6.42 (3), Stats.

counted for the persons for whom they were intended, so far as such intent can be ascertained therefrom."

The Federation has cited decisions of the labor relations agencies of three states disqualifying ballots which are marked with distinctive markings because such markings render them susceptible of being identified. In Minnesota, the supreme court held that a conciliator did not abuse his discretion in refusing to count a ballot which was marked in a way which might have identified it.[6] In Connecticut, a superior court reached a similar conclusion where a board voided a ballot, and said the board "could adopt a rigid policy or practice, regarding as void all marked ballots which, in its judgment, could identify the owner and voter."[7] The New York labor relations board voided a ballot marked with a "V" instead of an "X."[8]

The decisions by these labor boards appear to have been choices of policy and to have been upheld by the courts in two instances as being within their proper discretion. The national labor relations board has not evolved so strict a rule.

"Under our precedents, a ballot will not be invalidated by reason of its marking if the marking clearly indicates the voter's choice in the election and does not inherently identify the voter, or is not such a departure from the usual ways in which people mark ballots to warrant the conclusion that it is an identifying mark, unless it can be shown that the marking was used for identification purposes at the suggestion or urging of the participating Union or the Employer."[9]

---

[6] *State ex rel. American Federation, etc., v. Hanson* (1949), 229 Minn. 341, 38 N. W. (2d) 845.

[7] *Bisogno v. Board of Labor Relations* (1960), 22 Conn. Supp. 133, 142, 164 Atl. (2d) 166.

[8] *In re Colonial Sand & Stone Co., Inc.,* 10 LRRM 297.

[9] *Bridgeton Transit* (1959), 124 NLRB 1047, 1048.

The Wisconsin board has not seen fit to adopt a strict rule or policy with respect to variant markings of ballots. Although a variant form of marking could be used to destroy secrecy, it does not follow that the statutory requirement of a secret ballot compels the board to void all ballots marked with variant forms. The board, in deciding its policy, could properly consider the fact that employees, when voters at governmental elections in this state, are permitted to use marks other than an "X."

There is no evidence in the present record that there was fraud in the election under consideration, nor that there was a breach of secrecy in fact.

We agree with the conclusion reached by the learned circuit judge in the portion of his opinion devoted to the merits that the certification is entitled to affirmance.

*By the Court.*—Order dismissing petition for review is modified so as to be a judgment affirming the certification and, as so modified, is affirmed.